Kimberlee and Glenn LEUZ, Administrators of the Estate of Logan Leuz, Deceased, Petitioners,

v.

## SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.

No. 04–0042V.

United States Court of Federal Claims.

Jan. 4, 2005.

Lawrence R. Cohan and Heather J. Lipson, Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C., Philadelphia, PA, for petitioners.

Alexis B. Babcock, Trial Attorney, Vincent Matanoski, Assistant Director, Mark W. Rogers, Assistant Director, John Lodge Euler, Deputy Director, Timothy P. Garren, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, DC, for respondent.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on petitioners' Motion for Review of Chief Special Master Golkiewicz's Order of Dismissal dated July 15, 2004. The Court holds that the Dismissal Order is AFFIRMED, although, as set forth below, the Court reaches that result by a different route from that taken by the Chief Special Master.

## BACKGROUND

Logan Leuz was born on January 4, 2001. On March 13, 2001, at his pediatrician's office, Logan received the DtaP, Hib, Hepatitis B, and Prevnar vaccinations. Petition ("Pet.") at 1–2. Petitioners, Kim and Glenn Leuz, Logan's parents, allege that on March 16, 2001, Logan began moaning and wheezing, and on March 17, 2001 was cranky and crying inconsolably throughout the day. Pet'r Ex. E (Affidavits of Kim and Glenn Leuz). Petitioners allege that on March 18, 2001, Logan was found to be unresponsive in his home. Pet. at 2. Logan was taken by an emergency medical technician to Lower Bucks Hospital in Bristol, Pennsylvania, where he was pronounced dead after attempted cardiopulmonary resuscitation. Pet. at 2. An autopsy was performed on March 19, 2001. Pet'r Ex. G at 1–3.

On January 15, 2004, petitioners filed a petition in the above-captioned case, alleging that Logan died as a result of the vaccinations he received on March 13, 2001. On February 5, 2004, the Government filed a report in accordance with Rule 4(b) of Appendix B of the Rules of the United States Court of Federal Claims ("RCFC"), and a motion to dismiss for lack of subject matter jurisdiction. The Government argued that, under 42 U.S.C. § 300aa–16(a)(3) of the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa–10 *et seq.* (2000) ("Vaccine Act"), petitions alleging death due to a vaccination must be filed prior to the expiration of 24 months from the date of death. Because the petition was filed approximately ten months after the statute of limitations had expired, the case was untimely and the Court of Federal Claims lacked jurisdiction to entertain the petition. Petitioners acknowledged that the petition was filed after the statute of limitations had expired. They argued, however, that the requirement that claims be filed within 24 months from the date of death, as compared to 42 U.S.C. § 300aa–16(a)(2), which allows claims to be brought within 36 months after the date of the occurrence of the first symptom or manifestation of onset [of injury], "is a violation of their equal protection and due process rights as set forth under the Constitution of the United States of America." Pet'r Resp. at 2.

On July 15, 2004, Chief Special Master Golkeiwicz entered an order granting respondent's motion, holding that because petitioners' failed to comply with the statute of limitations requirements of the Vaccine Act, the Court lacked subject matter jurisdiction to entertain their petition. Dismissal Order, *Leuz v. Sec'y of the Dep't of Health and Human Services,* Case No. 04–0042V (Ct. of Fed. Claims, July 15, 2004) (hereinafter "Dismissal Order"). The Chief Special Master further determined that he lacked the authority to entertain constitutional claims that did not call for money damages. *Id.*

On August 13, 2004, petitioners filed a Motion for Review with this Court pursuant to 42 U.S.C. § 300aa–12(e)(1). In their motion, petitioners stated they were "fully aware that the Court of Federal Claims does not have jurisdiction to hear claims based upon constitutional issues." Pet. Mot. For Rev. at 1. Petitioners, however, felt "compelled to file [their] motion to preserve their rights for appeal purposes," and requested that the Court review and reconsider "the Constitutional issues of the violation of their equal protection and due process rights." *Id.*

## DISCUSSION

### I. Standard of Review Under the National Vaccine Injury Compensation Program

Pursuant to 42 U.S.C. § 300aa–11(a)(1), "[a] proceeding for compensation under the National Vaccine Injury Compensation Program for a vaccine-related injury or death shall be initiated by ... the filing of a petition ... with the United States Court of Federal Claims." A special master to whom the petition has been assigned shall, pursuant to 42 U.S.C. § 300aa–12(d)(3)(A), "issue a decision on such petition with respect to whether compensation is to be provided under the Program and the amount of such compensation. The decision of the special master shall ... include findings of fact and conclusions of law[.]"

Pursuant to 42 U.S.C. § 300aa–12(e)(1), a plaintiff may file a motion requesting that the Court of Federal Claims review the decision of the special master. "Upon the filing of a motion [for review], the Court of Federal Claims shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision, (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or (C) remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa–12(e)(2); *see also Hopkins v. Sec'y of the Dep't of Health and Human Serv.*, 62 Fed.Cl. 333 (2004).

**II. The Dismissal Order**

The United States Court of Federal Claims is a court of limited jurisdiction. *Phaidin v. United States*, 28 Fed.Cl. 231, 233 (1993); *Dynalectron Corp. v. United States*, 4 Cl.Ct. 424, 428, *aff'd*, 758 F.2d 665 (Fed.Cir. 1984) (table). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Congressional consent to suit in the Court of Federal Claims, which thereby waives sovereign immunity, must be explicit and strictly construed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *Fid. Const. Co. v. United States*, 700 F.2d 1379, 1383 (Fed.Cir.1983). Consent to suit in this court is granted pursuant to the Vaccine Act. *See Terran v. Sec'y of the Dep't of Health and Human Serv.*, 195 F.3d 1302, 1310 (Fed.Cir.1999) ("the Vaccine Act itself gives jurisdiction to the Court of Federal Claims to determine whether [a plaintiff] is entitled to compensation ...") (citing 42 U.S.C. § 300aa–12(a)).

The Chief Special Master noted that " 'a statute of limitations is a condition on the waiver of sovereign immunity by the United States,' and courts should be 'careful not to interpret [a waiver] in a manner that would extend beyond that which Congress intended.' " Dismissal Order at 3 (quoting *Brice v. Sec'y of the Dep't of Health and Human Serv.*, 240 F.3d 1367, 1370 (Fed.Cir.), *cert. denied*, 534 U.S. 1040, 122 S.Ct. 614, 151 L.Ed.2d 538 (2001)). Section 300aa–16(a)(3) of title 42 states that "if a death occurred as a result of the administration of [the vaccines administered to Logan], no petition may be filed for compensation under the [Vaccine Injury Compensation] Program for such death after the expiration of 24 months from the date of the death[.]" There is no dispute that petitioners filed their claim approximately 33 months after Logan's death. The Chief Special Master stated that because petitioners failed to file their claim within 24 months of Logan's death, the Court of Federal Claims lacks jurisdiction over their petition. The Chief Special Master also noted that Congress has expressly prohibited the special masters of the Court of Federal Claims from applying the doctrine of equitable tolling to the limitations period of section 300aa–16(a). Dismissal Order at 3 (citing *Brice*, 240 F.3d at 1373).

The petitioners, however, challenge section 300aa–16(a)(3) on the grounds that it violates their rights to due process and equal protection under the Constitution. Therefore, they argue, their petition should be held to be timely under section 300aa–16(a)(2), which provides a 36–month statute of limitations for filing a petition for damages for injuries resulting from the administration of a vaccine. Pet'r Resp. at 3. The Chief Special Master stated in his Dismissal Order that petitioners raised "questions regarding the special masters' authority to address constitutional claims" when they argued that the statute of limitations provisions of the Vaccine Act violated their equal protection and due process rights. Dismissal Order at 3, 5.

The Chief Special Master addressed the petitioners' challenge by stating, "[a]s the Vaccine Act provides the source of the special masters' authority, '[a]ny and all authority pursuant to which [a special master] may act ultimately must be grounded in an ex-

press grant from Congress.'" Dismissal Order at 5 (quoting *Patton v. Sec'y of the Dep't of Health and Human Serv.*, 25 F.3d 1021, 1027 (Fed.Cir.1994) (quoting *Killip v. Office of Pers. Mgmt.*, 991 F.2d 1564, 1569 (Fed.Cir. 1993))). Because "[t]he Vaccine Act provides no textual authority, nor did petitioners cite any authority, granting the special masters authority to determine the constitutionality of its provisions ... the [Chief Special Master] does not have jurisdiction to conduct any proceedings pursuant to § 300aa–12(d)(3)(A)–(B), including ruling on constitutional claims, on a petition which was filed outside of the statutorily prescribed limitations period." Dismissal Order at 5. "The Court's judges have broader jurisdictional authority than the special masters," the Chief Special Master stated. "However, even if it is argued that the special masters derive power from the Court of Federal Claims, a highly dubious proposition, the Court's power is limited to money mandates." Dismissal Order at 5.

It is true that, in addition to petitions filed under the Vaccine Act, the Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." "However, a plaintiff cannot rely solely on the Tucker Act, but must also 'assert a claim under a separate money mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'" Dismissal Order at 5 (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998)). The Chief Special Master held: "The Court of Federal Claims has 'no jurisdiction to hear claims based on the due process or equal protection guarantees of the Fifth Amendment, as these Constitutional provisions do not obligate the federal government to pay money damage.'" *Id.* (quoting *Greider v. Sec'y of the Dep't of Health and Human Serv.*, No. 90–648V, 23 Cl.Ct. 348, 350 (1991)) (citing *Carruth v. United States*, 224 Ct.Cl. 422, 627 F.2d 1068,

1081 (1980); *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997)). "Further, the Claims Court may not entertain claims outside its statutorily imposed jurisdictional authority." *Id.* (citing *Adams v. United States*, 20 Cl.Ct. 132, 135 (1990)).

The Chief Special Master concluded that he "lacks the authority to consider these constitutional challenges under either the Vaccine Act's grant of jurisdiction or under the Court's broader jurisdictional grant." Dismissal Order at 6. Therefore, because the petition was filed beyond the 24 months provided for under the Vaccine Act, and because the Court of Federal Claims lacked the authority to address constitutional challenges to provisions of the Vaccine Act, the Chief Special Master dismissed the petition. *Id.*

### III. The Court of Federal Claims "Has the Power Necessary to Adjudicate" Petitioners' Constitutional Challenge to 42 U.S.C. § 300aa–16(a)(3)

■ The Chief Special Master misconstrued the jurisdiction of this court when he held that the Court of Federal Claims lacks jurisdiction to consider petitioners' constitutional challenge to the statute of limitations provision of the Vaccine Act.

The Chief Special Master characterized petitioners' challenge to 42 U.S.C. § 300aa–16(a)(3) as a claim based upon a non-money-mandating provision of the Constitution. Dismissal Order at 3, 5 ("[Petitioners'] assertion raises questions regarding the special masters' authority to address constitutional claims"). Petitioners' claim, however, was not "a claim against the United States founded ... upon the Constitution." 28 U.S.C. § 1491(a)(1). Rather, petitioners' claim was based on the Vaccine Act, which, in addition to being a money-mandating statute, constitutes an independent congressional grant of jurisdiction. Pet. at 1; *Terran*, 195 F.3d at 1310 ("Indeed, we note that the Vaccine Act itself gives jurisdiction to the Court of Federal Claims to determine whether Terran is entitled to compensation, independent of the Tucker Act.") (citing 42 U.S.C. § 300aa–12(a)). While petitioners challenge the Vac-

cine Act on constitutional grounds, their underlying claim arises under the Vaccine Act, not the Constitution.

The petitioner in *Terran*, 195 F.3d 1302, made a similar Constitution-based challenge to the Vaccine Act. In *Terran*, the petitioner challenged the Vaccine Act on grounds that it violated the Presentment Clause of the Constitution because it allowed the Secretary of the Department of Health and Human Services to modify the statutorily-established Vaccine Injury Table ("Table") by administrative rulemaking. *Id.* at 1307–08. The Court of Federal Claims denied Terran's constitutional challenge on jurisdictional grounds, holding that it lacked jurisdiction over claims based on constitutional provisions not mandating payment of money damages by the federal government. *Id.* at 1309. The Court of Appeals for the Federal Circuit held that "the Court of Federal Claims misconstrued the scope of its jurisdiction." *Id.* The Court of Appeals found that the fact that the Presentment Clause was not money mandating was inapposite. The court explained: "When determining jurisdiction ... we must look to the true nature of the underlying action. Here, Terran's claim for relief is based on the Vaccine Act and is a claim for money—that is, compensation under the Act. Therefore, the Vaccine Act is the 'Act of Congress' which forms the basis of Terran's claim, and there is little dispute that such a claim is one for presently due money damages." *Id.* at 1310 (citing *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed.Cir.1994); *Livingston v. Derwinski*, 959 F.2d 224, 225 (Fed. Cir.1992); 42 U.S.C. § 300aa–12(a)). "Because jurisdiction is proper, the Court of Federal Claims had the power to address Terran's argument based on the Constitution." *Id.* Additionally, "[i]t is ... reasonable to infer that the Vaccine Act must confer on the Claims Court that power which is necessary to adjudicate the controversy before it," *Beck v. Sec'y of the Dep't of Health and Human Serv.*, 924 F.2d 1029, 1036 (Fed. Cir.1991). Thus, even though petitioners filed their petition after the expiration of the statute of limitations, the Court of Federal Claims has authority to evaluate their constitutional challenge to 42 U.S.C. § 300aa–16(a).

The Court of Federal Claims has previously evaluated constitutional challenges to statutes of limitation, even after finding that the petitioners had failed to satisfy the jurisdictional prerequisites of the Vaccine Act. In *Black v. Sec'y of the Dep't of Health and Human Serv.*, 33 Fed.Cl. 546 (1995) *aff'd*, 93 F.3d 781 (Fed.Cir.1996), the special master dismissed Black's claim for lack of jurisdiction when Black failed to demonstrate that she "had incurred in excess of $1,000 in unreimbursable expenses due in whole or in part to the vaccine-related injury as mandated in section 11(c)(1)(D)(i) of the Vaccine Act." 33 Fed.Cl. at 548. Black sought review of, among other things, the special master's interpretation of the Vaccine Act, arguing that it denied her "fundamental fairness, due process, and equal protection under the law." Though the Court of Federal Claims held that "[t]he petitioner, having failed to establish the jurisdictional prerequisite of 11(c)(1)(D)(i), is not entitled to enter the Program, and his petition was correctly dismissed," *id.* at 551, it nonetheless evaluated Black's constitutional challenges to section 11(c)(1)(D)(i). *Id.* at 553–56; *see also Rodriguez v. Sec'y of the Dep't of Health and Human Serv.*, 34 Fed.Cl. 57, 60 (1995) (evaluating petitioners' equal protection challenge to 42 U.S.C. § 300aa–11(c)(1)(D)(i) after affirming the special master's holding that petitioners had failed to incur unreimbursable vaccine-related expenses in excess of $ 1,000, a statutory prerequisite to filing a petition).

### IV. 42 U.S.C. § 300aa–16(a)(3) Does Not Violate Petitioners' Rights to Due Process or Equal Protection

Petitioners contend that 42 U.S.C. § 300aa–16(a)(3) violates the Due Process Clause and the Equal Protection component of the Fifth Amendment of the United States Constitution because 42 U.S.C. § 300aa–16(a)(2) provides children who suffer injuries as a result of the administration of a vaccine more time to file a petition for compensation than children who suffer death as a result of the administration of a vaccine. For the reasons set forth below, the Court holds that 42 U.S.C. § 300aa–16(a)(3) does not violate petitioners' rights to due process or equal protection.

A. *Equal Protection Claim*

The Fifth Amendment states, in relevant part, that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend V. Although "the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964) (quoting *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). "Thus, if a federal statute is valid under the equal protection component of the Fifth Amendment, it is perforce valid under the Due Process Clause of that Amendment." *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174 n. 8, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (citing *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) (citing *Bolling v. Sharpe,* 347 U.S. at 499, 74 S.Ct. 693)).

■ The criteria for eligibility under the Vaccine Act are analyzed under the "rational basis" standard rather than the "strict scrutiny" test that is applied in equal protection cases where a fundamental right is at stake or when the government acts on the basis of a suspect classification. Dismissal Order at 4 n. 2; *see Black,* 93 F.3d at 787. The Vaccine Act "does not implicate any 'fundamental right,' for a 'noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status.'" *Black,* 93 F.3d at 787 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Thus, the Vaccine Act's eligibility standard complies with equal protection principles so long as it meets the "rational basis" test traditionally applied to legislation that confers benefits on qualifying persons. *See id.* at 788, 95 S.Ct. 2457.

The Supreme Court has distinguished eligibility for social welfare programs as "'peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary.'" *Black,* 93 F.3d at 788 (quoting *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (quoting *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976))); *see also Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) ("In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."). Congress is not obligated to extend the coverage of the Vaccine Act cases to all person suffering a vaccine-related injury. *Black,* 93 F.3d at 788; *Califano v. Boles,* 443 U.S. 282, 296, 99 S.Ct. 2767, 61 L.Ed.2d 541 (1979). Further, there is a "strong presumption of constitutionality" that attaches to legislation conferring monetary benefits. *See Black,* 93 F.3d at 788; *Mathews v. de Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

■ Petitioners argue that the Act's "distinguishing between the time frames within which each Petitioner can file their claim in the National Vaccine Injury Compensation Program ('NVCP') is not 'reasonably related' to a legitimate government interest, and would render it unconstitutional for creating classifications between children of like circumstances that are unreasonable, arbitrary, and unlawful." Pet'r Resp. at 3. Petitioners further assert that "[t]here is absolutely no justification, nor does the statute recognize a justification, as to why the injured group of children should receive the additional advantage of another year in which to file a claim, while the group of deceased children is left with absolutely no remedy beyond two years." *Id.* at 4.

Though the Chief Special Master concluded that he lacked authority to rule on petitioners' constitutional challenge to 42 U.S.C. § 300aa–16(a), he nonetheless evaluated petitioners' challenge in order "to give full and complete consideration to petitioners' arguments." Dismissal Order at 6 n. 3. The Dismissal Order fully addressed petitioners' equal protection claim, explaining:

> Contrary to petitioners' assertions, there are in fact logical reasons, or a 'rational basis,' for the filing of a petition alleging a vaccine-related death versus one alleging a vaccine-related injury.
>
> In a death case, the events surrounding the death are static; the vaccination is

given, the reaction occurs, and medical treatment is rendered. Subsequent to death, no further factual or medical attention occurs. In addition, the damages are set at the time of filing—compensation is limited to $250,000. This contrasts with an injury case, where symptomology unfolds and medical observation, treatment and diagnoses continue unabated. It is reasonable and logical that Congress would allow greater time for an injured petitioner to file a claim, giving greater time for the vaccine-related events to mature, in order to allow the medical professional time to interpret those events, and to give the lawyers time to interpret the legal significance of the medical events. Contrary to petitioners' assertions here, there are significant differences between death and injury cases, justifying different filing time frames.

Dismissal Order at 4 n. 2. The Court agrees with this reasoning and accordingly, adopts and affirms the Chief Special Master's analysis of petitioners' equal protection challenge to 42 U.S.C. § 300aa–16(a).

### B. *Due Process Claim*

#### 1. *Procedural v. Substantive Due Process*

" 'The touchstone of due process is protection of the individual against arbitrary action of the government,' whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); citing *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). The Supreme Court in *Sacramento* also explained that the "procedural due process guarantee protects against 'arbitrary takings,' while the substantive due process guarantee protects against government power arbitrarily and oppressively exercised." *Id.* at 846, 118 S.Ct. 1708 (citing *Fuentes*, 407 U.S. at 82, 92 S.Ct. 1983; *Dan-*

*iels,* 474 U.S. at 331, 106 S.Ct. 662). In *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Supreme Court stated:

> This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as "procedural" due process.

*Id.* at 746, 107 S.Ct. 2095 (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Palko v. Connecticut,* 302 U.S. 319, 325–326, 58 S.Ct. 149, 82 L.Ed. 288 (1937); citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

#### 2. *Substantive Due Process*

■ Substantive due process claims focus on the "essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir.1990). In the case at bar, any claim of a violation of petitioners' substantive due process rights fails unless Congress's provision of a two-year statute of limitations for alleged vaccine-related death claims under the Vaccine Act, "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Salerno,* 481 U.S. at 746, 107 S.Ct. 2095. The Vaccine Act's statute of limitations, providing a two-year window within which to file a petition after an alleged vaccine-related death, does not "shock the conscience," nor does it interfere with any of petitioners' fundamental rights. As such, so long as Congress's action was rational, the Vaccine Act's statute of limitations does not violate any substantive due process rights petitioners may have.

Congress intended the Vaccine Act to free manufacturers from the specter of large, uncertain tort liability in order "to ensure the availability of childhood vaccines and to provide fair and simple compensation to those injured by such vaccines." *Charette v. Sec'y of the Dep't. of Health and Human Serv.,* 33 Fed.Cl. 488, 492 (1995) (citing H.R. REP. No. 908, 99th Cong., 2d Sess. 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347); *see also Schafer v. American Cyanamid Co.,* 20 F.3d 1, 2–3 (1st Cir.1994). The Federal Circuit noted in *Brice* that the limitations period is part of a "detailed statutory scheme which includes other strict deadlines" and promotes the legislative intent of "quick resolution of claims." 240 F.3d at 1373. Also, the enforcement of a "statutory cut-off date 'provides claimants with certainty and in no way reduces the generosity of the program or the speed with which the claims are adjudicated.'" *Id.* at 1373 (citing *Weddel v. Sec'y of the Dep't. of Health and Human Serv.,* 100 F.3d 929, 932 (Fed.Cir.1996)).

The two-year statute of limitations is rationally related to the Act's dual purposes of settling claims quickly and easily, without collateral litigation, and protecting manufacturers from uncertain tort liability. "[I]t is not a court's function to disregard a statutory provision or to strike it down on Constitutional grounds whenever the provision produces a result in a particular case that is contrary to what the court discerns as the general [compensatory] purpose underlying the statute." *Black,* 93 F.3d at 789 (citing *Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Here, the petitioners have not persuasively argued that the statute of limitations has operated in any manner contrary to its legislative purpose.

### 3. *Procedural Due Process*

Procedural due process is a "guarantee of fair procedure." *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In evaluating a procedural due process claim, the court must determine whether a procedure is in place which may deprive petitioners of life, liberty, or property.

### a. *Petitioners have not been deprived of any life, liberty, or property interest*

■ Petitioners argue that "[t]here is little doubt that petitioners have a private interest in the claim ... filed in the NVCP; nor can there be any doubt that this interest is grounded in their right to due process. It is also clear that under a plain reading of 42 U.S.C. § 300aa–16(a)(3), petitioners would be completely deprived of their protected interest—they have no claim for compensation in the NVCP, and would also be unable to seek relief in the state tort system." Pet'r Resp. at 8.

However, "a plaintiff has no vested right in any tort claim for damages[.]" *Ducharme v. Merrill–Nat'l Lab.,* 574 F.2d 1307, 1309 (5th Cir.), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 677 (1978); *see also Hammond v. United States,* 786 F.2d 8, 12 (1st Cir.1986) ("Because rights in tort do not vest until there is a final, unreviewable judgment, Congress abridged no vested rights of the plaintiff by enacting Section 2212 and retroactively abolishing her cause of action in tort.") A property interest does not exist simply because one has a "need" or "unilateral expectation" of property; it exists if the claimant has a "legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The due process protection of property interests applies only to interests "that a person has already acquired[.]" *Id.* at 576, 92 S.Ct. 2701. A tort claim only becomes a vested property right once final judgment has been rendered in the claimant's favor. *County of Suffolk v. Long Island Lighting Co.,* 14 F.Supp.2d 260, 265 (E.D.N.Y.1998) (citing *McCullough v. Virginia,* 172 U.S. 102, 123–24, 19 S.Ct. 134, 43 L.Ed. 382 (1898) (It is only after an action has "passed into judgment" that the "power of the legislature to disturb the rights created thereby ceases.")).

In some instances, petitioners may have a "species of property" right in a state law cause of action. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 n. 4, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Hammond,* 786 F.2d at 12. Petitioners, however, never had a right to pursue a state tort claim for com-

pensation for Logan's alleged vaccine-related injuries without first filing a petition for those injuries under the Vaccine Act. 42 U.S.C. § 300aa–11(a)(2)(A) ("No person may bring a civil action for damages ... against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part, and no such court may award damages ... for such a vaccine-related injury or death, unless a petition has been filed, in accordance with [42 U.S.C. § 300aa–16(a)], for compensation under the Program for such injury or death ..."). When enacted, the Vaccine Act distinguished between claims that arose before the Act became law and those claims that arose after. Petitioners bringing the former retained their ability to bring a traditional federal or state tort action regardless of the Act; petitioners bringing the latter had to file under the Vaccine Act. The Vaccine Act was the law of the land when petitioners' cause of action arose. As such, the only property rights petitioners had to sue a manufacturer for alleged vaccine-related injuries necessarily flowed through the Vaccine Act. Because petitioners have not been deprived of any property right, they suffered no procedural due process violation.

b.   *Under the Mathews v. Eldridge balancing test, section 300aa–16(a) has afforded petitioners their right to procedural due process*

Courts balance a number of factors in determining whether claimants have been afforded procedural due process. The factors include: (1) the strength of the private interests that would be affected by the official action; (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. 893.

The issue in *Mathews* was "whether procedural due process required a hearing prior to the determination of Social Security disability benefits." *Black,* 93 F.3d at 789. In considering whether the Vaccine Act's original requirement of $1,000 in unreimbursed expenses violated the due process clause, the Court of Appeals for the Federal Circuit noted that the Vaccine Act "provides the parties with the ultimate hearing: a judicial forum in which to litigate the question of eligibility." *Id.* In *Black,* the Court of Appeals stated that "[w]hat the petitioners object to is not the denial of a hearing, but the substantive rule of eligibility that has been applied to them." *Id.* The same is true in this case. Therefore, petitioners do not raise a valid due process argument.

Petitioners argue that the private interest at stake is their federal cause of action under the Vaccine Act and their state cause of action to bring a claim against the vaccine manufacturer. Petitioners contend that they would have no further recourse and there would be no potential accountability for the loss of their son if the Vaccine Act's statute of limitations is not found unconstitutional. Pet'r Resp. at 9; *see McDonald v. Lederle Lab.,* 341 N.J.Super. 369, 775 A.2d 528, 529 (2001) (holding that section 300aa–11(a)(2)(A) of "the [Vaccine] Act bars an individual, who files an untimely petition, from later seeking recovery for injuries resulting from an adverse reaction to vaccination in a subsequently filed State civil action").

To the extent that state or federal courts interpret section 11 of the Vaccine Act as prohibiting a subsequent civil action, those courts are simply implementing the law as it existed when petitioners' claim first arose. If a claim is filed beyond the statute of limitations set forth in the Vaccine Act, regardless of whether a different state law statute of limitations may have existed prior to the passage of the Vaccine Act, Congress intended for 42 U.S.C. § 300aa–16(a) to be the only statute of limitations to apply. From the time their claim arose, the Vaccine Act provided the boundaries of petitioners' private interest in a civil action; they were not deprived of any such interest.

Petitioners also contend that tolling the statute of limitations under 42 U.S.C. § 300aa–16(a) would not result in any additional cost to the government. They state that:

> At this point in the underlying litigation it is wholly uncertain as to whether there will be any cost at all to the government as this is a cause-in-fact case whereby expert reports will be necessary for Petitioners to prove their case which is often an insurmountable obstacle to overcome. The only real issue is whether allowing Petitioners to seek the process of law provided for in the NVCP would protect the policy interests of the government as expressed in the NVCP.

> There can be no doubt that allowing Petitioners' claim to go forward, the government's policy interest of pursuing vaccine-related claims in the NVCP, and not in state court against the vaccine manufacturers, would continue to be served.

Pet'r Resp. at 10. However, the "government's interest ... and the fiscal and administrative burdens" that extending the statute of limitations would entail would be great. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. The Court of Appeals stated that tolling the statute of limitations in such a manner "invites prolonged and wasteful collateral litigation concerning the running of the statute of limitations." *Brice*, 240 F.3d at 1373. "Lengthy collateral litigation is directly inconsistent with Congress's objective in the Vaccine Act to settle claims quickly and easily." *Id.*

Passage of the Vaccine Act was motivated by a concern that tort law remedies were an inconsistent and unsatisfactory approach to compensating individuals injured by vaccines and that uncertain tort liability would make vaccine production potentially ruinous to manufacturers and threaten vaccine supply. *See Brice*, 240 F.3d at 1368 (citing H.R. REP. No. 99–908, at 6–7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347–48). Congress designed the Vaccine Act as a unique alternative to traditional tort litigation: a streamlined system of recovery, with strict and certain deadlines, having the salutary effect of guaranteeing that vaccines remain available. The cost of tolling the statute of limitations of 42 U.S.C. § 300aa–16(a) would be great, and would be "inconsistent with the existing statutory scheme." *Id.* at 1374.

### CONCLUSION

For the reasons set forth above, this Court holds that the Court of Federal Claims has jurisdiction to consider petitioners' constitutional challenge to 42 U.S.C. § 300aa–16(a)(3) and, having considered that challenge, upholds the Vaccine Act's 24–month statute of limitations as applied to petitioners. Because petitioners' claim is time barred, the Court lacks jurisdiction to hear it. Therefore, Chief Special Master Golkiewicz's Dismissal Order is AFFIRMED and petitioners' Motion for Review is DENIED.

The Clerk is directed to enter judgment dismissing petitioners' petition pursuant to Rule 30(a) of Appendix B of the RCFC.

IT IS SO ORDERED.