Steven KRAVITZ, et al., Plaintiffs

v.

**EVANS MEDICAL LTD.,**
et al., Defendants.

Case No. 09–21414–CIV–JORDAN.

United States District Court,
S.D. Florida,
Miami Division.

Sept. 27, 2010.

**1300**

Lewis S. Eidson, Colson Hicks Eidson, Coral Gables, FL, Paul Courtney Huck, Jr., Office of the Attorney General, Fort Lauderdale, FL, for Plaintiffs.

Mercer Kaye Clarke, Rossana Navarro, Clarke Silverglate & Campbell, P.A., Hildy M. Sastre, Shook Hardy & Bacon, James Pierce Murray, Fowler White Burnett, Miami, FL, Andrew J. Calica, Henninger S. Bullock, Mayer Brown LLP, New York, NY, Brian Douglas Equi, Seipp & Flick, LLP, Lake Mary, FL, David J. Walz, Edward Walter Gerecke, John Anderson Camp, Carlton Fields, Tampa, FL, for Defendants.

## ORDER ON PENDING MOTIONS

ADALBERTO JORDAN, District Judge.

Applying the standard set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and for the reasons which follow, the defendants' motions to dismiss [D.E. 66, 68, 72] are denied. The motions to adopt filed by Sanofi Pasteur, Henry Schein, and Medeva Pharmaceuticals, CA [D.E. 69, 73, 74] are granted.

### I. THE ALLEGATIONS

In their amended complaint, Steven and Wendy Kravitz allege the following facts.

Sometime in December of 1996, Dr. Joseph Singer administered an influenza vaccine to Mr. Kravitz. The vaccine, which was manufactured and sold by one or more of the defendants,[1] was supposed to protect Mr. Kravitz against a specific strain of flu virus for his lifetime. Approximately three weeks after receiving the vaccine, Mr. Kravitz first began experiencing double vision and weakness and numbness in his hands. As a direct result of the vaccine, Mr. Kravitz developed (and continues to suffer from) an acute and chronic form of Guillain–Barre Syndrome (GBS), known as Chronic Inflammatory Demyelinating Polyneuropathy (CIDP), a neurological disorder characterized by progressive weakness and impaired sensory function in the legs, arms, and other parts of the body. CIDP is caused by damage to the myelin sheath of the peripheral nerves.

Mr. Kravitz has asserted negligence and strict liability claims against each of the defendants. Mrs. Kravitz has asserted a loss of spousal consortium claim against each of the defendants.

### II. DISCUSSION

The defendants have moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6), essentially arguing that the claims against them cannot proceed because Mr. and Mrs. Kravitz have not first filed a claim with the Vaccine Court (a special master acting under the jurisdiction of the Court of Federal Claims) under provisions of the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–1 et seq., and because the claims are barred by the applicable statute of

---

1. The defendants named in the amended complaint are Evans Medical Ltd.; Medeva Pharmaceuticals, CA; Medeva Pharmaceuticals, MA; Medeva Pharmaceuticals, PA; Powder-Ject Pharmaceuticals, PLC; Chiron Corp.; Novartis Vaccines and Diagnostics, Inc.; Warner–Lambert Co., LLC; Parke, Davis, & Company; Parke, Davis, & Company, LLC; Parke–Davis Mfg. Co.; Pfizer, Inc.; Sanofi Pasteur, Inc.; Sanofi Pasteur, Inc./Connaught Laboratories, Inc.; Wyeth, Inc.; Wyeth Holdings Corporation; Wyeth; Wyeth Pharmaceuticals, Inc.; and Henry Schein, Inc. Since the filing of the amended complaint, the claims against Henry Schein have been dismissed without prejudice.

limitations and statute of repose under Florida law. I do not believe these arguments are persuasive at this stage of the litigation.

## A. THE VACCINE ACT

■ The pre-suit /exhaustion provision of the Vaccine Injury Act provides that "no person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a state or federal court for damages arising out of a vaccine-related injury ... associated with the administration of a vaccine after October 1, 1988, ... unless a petition has been filed, in accordance with [§ ] 300aa–16 of this title, for compensation under the [National Vaccine] Program for such injury ... [.]" *See* § 300aa–11(a)(2)(A). If a civil action which is barred under this provision is filed in a state or local court, the "court shall dismiss the action." *See* § 300aa–11(a)(2)(B).

In relevant part, § 300aa–11(b)(1)(A) provides that a person who suffered a vaccine-related injury "may, if [he] meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program." In turn, § 300aa–11(c)(1)(A) says, among other things, that a person can file a petition if he suffered a vaccine-related injury from a vaccine "set forth in the Vaccine Injury Table." Thus, it is necessary to look at the Vaccine Injury Table to determine a person's eligibility to file a petition for compensation.

The Vaccine Injury Table contains a list of vaccines "for the purpose of receiving compensation under the [National Vaccine] Program." *See* § 300aa–14(a). In December of 1996, the influenza vaccine given to Mr. Kravitz was not listed in the Vaccine Injury Table. *See id.* It was added to the Vaccine Injury Table by the Secretary for Health and Human Services, *see* § 300aa–14(c), with an effective date of July 1, 2005.

*See* 70 Fed.Reg. 19092 (April 12, 2005). The Secretary's notice stated that individuals injured by influenza vaccine could file a petition for compensation under the National Vaccine Program "until July 1, 2007, *as long as the vaccine-related injury or death occurred on or after July 1, 1997 (8 years prior to the effective date of the addition that included trivalent influenza vaccines as covered vaccines)." See id.* at 19093 (emphasis added). This statement was based on a provision of the Vaccine Injury Act dealing with revisions to the Vaccine Injury Table:

> If at any time the Vaccine Injury Table is revised and the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the [Vaccine Injury] Program ... such person may, notwithstanding [§ ] 300aa–11(b)(2) of this title, file a petition for such compensation not later than 2 years after the effective date of the revision, except that no compensation may be provided under the Program with respect to a vaccine-related injury ... covered under the revision of the Table if ... (2) *the vaccine-related injury occurred more than 8 years before the date of the revision of the Table,*

§ 300aa–16(b) (emphasis added).

Mr. Kravitz alleges that he began experiencing adverse symptoms (double vision and weakness and numbness in his hands) several weeks after the administration of the vaccine in December of 1996. Thus, viewing the complaint in the light most favorable to him, the injury from the vaccine occurred before July 1, 1997. It therefore appears that, pursuant to the Secretary's notice and the language of § 300aa–16(b)(2), Mr. Kravitz would not be able to obtain any compensation under the National Vaccine Program.

The question, then, is whether a person like Mr. Kravitz must—before suing in state or federal court—file a petition with the National Vaccine Program even if he is statutorily precluded from obtaining compensation in the first place because his injury took place outside of the 8–year "look-back" period. I conclude that the answer is no. Even if Mr. Kravitz were otherwise qualified to file a petition under § 300aa–11(b), any petition would have failed as a matter of law and would have been futile because his injury (as alleged in the amended complaint) took place before the 8–year "look-back" period specified in § 300aa–16(b) and the notice issued by the Secretary. *See* § 300aa-11(a)(9) ("This subsection applies only to a person who has sustained a vaccine-related injury and who is qualified to file a petition for compensation under the Program."). In my view, Congress would not (and does not) require a person injured by a newly-added vaccine to seek compensation under the Vaccine Injury Act if that person was not eligible for any compensation—pursuant to the terms of the Act and the notice adding the vaccine to the Vaccine Injury Table— and therefore could never obtain any compensation. As the Fifth Circuit has explained, albeit in dicta, the "restriction on filing tort claims applies only to those who have 'sustained a vaccine-related injury or death and who [are] qualified to file a petition for compensation under the [Vaccine Injury] Program.' § 300aa–11(a)(9). In this way, the Vaccine Act treats 'the tort suit procedural bar and Vaccine Court compensation as opposite sides of the same coin.' *[The Vaccine Injury Program] delays the filing of only those tort claims for which it first provides an alternate source*

*of compensation." Moss v. Merck & Co.*, 381 F.3d 501, 505 (5th Cir.2004) (emphasis added and citation omitted).

Things would be different had Mr. Kravitz been theoretically eligible for compensation and his right to compensation depended on issues of fact like causation. In that scenario, the Vaccine Court would have had jurisdiction to initially determine whether Mr. Kravitz was entitled to compensation, and he would have been required to file a petition under the Vaccine Injury Program. *See* §§ 300aa– 11(a)(2)(A)–(B), 300aa–12(a).[2]

Similarly, if Mr. Kravitz's injuries from the vaccine occurred between July 1, 1997, and July 1, 2005—and not, as he alleges, in late December of 1996 or early January of 1997—then he would likely have been barred from suing here first. *See, e.g., Corder v. Secretary*, 2008 WL 2275570, *1 (Ct. Cl. Special Master 2008) (claimant who received influenza vaccine in December of 2004 and developed GBS in April of 2005 was required to file petition with the National Vaccine Program by July 1, 2007); *Miller v. Secretary*, 2008 WL 458727, *1–*2 (Ct. Cl. Special Master 2008) (dismissing petition of claimant—filed on July 16, 2007—where influenza vaccine was administered in October of 1999 and harm manifested in 2000). In such a case, Mr. Kravitz would have been eligible (or, to use the statutory language, qualified) to file a petition for compensation with the National Vaccine Program. Had he not filed a petition on time, or had he not filed one at all, he would not be allowed to file suit in state or federal court and bypass the Vaccine Court. That is what I take from the cases cited by the defendants.

**2.** I recognize that it may be difficult for Mr. Kravitz to simultaneously avoid the strictures of the Vaccine Injury Act (by maintaining that his injuries took place in late December of 1996 or early January of 1997, outside of the 8–year "look back" period specified in the

notice and § 300aa–16(b)(2)) and not run afoul of the applicable four-year statute of limitations under Florida law. Any such difficulty, however, is a matter for another day on a fully developed record.

*See, e.g., Gross v. Aventis Pasteur, Inc.,* 2004 WL 1717657, *2–*3 (D. Oregon 2004) (plaintiff could have filed petition with National Vaccine Program, but had let statute of limitations under Program lapse, and unsuccessfully argued that she was not qualified to file a petition because she was now time-barred); *Reilly v. Wyeth,* 377 Ill.App.3d 20, 315 Ill.Dec. 428, 876 N.E.2d 740, 750–52 (2007) (same); *Cheskiewicz v. Aventis Pasteur, Inc.,* 843 A.2d 1258, 1262–64 (Pa.Sup.2004) (same). If discovery reveals that Mr. Kravitz's injuries actually took place during the 8–year "lookback" period—i.e., between July 1, 1997, and July 1, 2005—the defendants can move for summary judgment for failure to first seek compensation under the National Vaccine Program.

### B. THE STATUTE OF LIMITATIONS & AND THE STATUTE OF REPOSE

■ Under Florida law, both the statute of limitations and the statute of repose are affirmative defenses. *See, e.g., Johnston v. Hudlett,* 32 So.3d 700, 704 (Fla. 4th DCA 2010); *AVCO Corp. v. Neff,* 30 So.3d 597, 604 (Fla. 1st DCA 2010); *Doe v. Hillsborough County Hosp. Authority,* 816 So.2d 262, 264 (Fla. 2nd DCA 2002). Dismissal of a complaint based on such affirmative defenses is appropriate only if a bar is apparent on the face of the complaint. *See, e.g., La Grasta v. First Union Securities,* 358 F.3d 840, 845 (11th Cir.2004).

#### 1. FLA. STAT. § 95.11(3)(E)

Florida has a four-year statute of limitations for product liability actions. *See* Fla. Stat. § 95.11(3)(e); *Carter v. Brown & Williamson Tobacco Corp.,* 778 So.2d 932, 936 (Fla.2000). The limitations period starts to run "from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(b).

■ The defendants argue that the claims in this case are time-barred. At this stage of the proceedings, I disagree. Under Florida law, the question of when a person discovered or should have discovered the facts giving rise to a cause of action is normally for the jury. *See Reisman v. General Motors Corp.,* 845 F.2d 289, 291–92 (11th Cir.1988) (citing Florida cases). The amended complaint is silent as to when the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence. For example, there are simply no allegations about what factors, other than vaccines, may cause or trigger the onset of GBS and/or CDIP, and a court should not be forced to guess about such critical facts on a motion to dismiss. Also missing from the amended complaint is any information about what inquiries, if any, Mr. Kravitz made after first experiencing the symptoms alleged, and when those symptoms were sufficiently adverse to constitute notice to a reasonable person that they might be causally related to the vaccine. Although the lengthy period of time between the initial symptoms experienced by Mr. Kravitz and the filing of the complaint may instinctively suggest a statute of limitations problem, *cf. University of Miami v. Bogorff,* 583 So.2d 1000, 1004 (Fla.1991) (product liability claim against drug manufacturer accrued when child became paralyzed and suffered brain damage within months of last administration of drug, where parents knew about the use of the drug in child's treatment), the amended complaint is not subject to dismissal at this time.

#### 2. FLA. STAT. § 95.031(2)(B)

■ Florida's current statute of repose for products liability actions, enacted in 1999, provides in relevant part as follows:

Under no circumstances may a claimant commence an action arising from per-

**1304**

sonal injury ... caused by a product with an expected useful life of 10 years or less, *if the harm was caused by the product more than 12 years after delivery of the product to its first purchaser* ... who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product.

Fla. Stat. § 95.031(2)(b) (emphasis added). The defendants' argument is that the statute of repose bars the claims of Mr. and Mrs. Kravitz because the lawsuit was filed more than 12 years after the sale of the vaccine to Dr. Singer, the "first purchaser" of the product. This argument fails for a number of reasons.

First, § 95.031(2)(b) is not a traditionally-worded statute of repose, which would absolutely bar a suit brought after a specified time measured from the date of a certain act (e.g., the sale of a product). *See Bogorff,* 583 So.2d at 1003; Black's Law Dictionary 1546 (9th ed. 2009). The current statute of repose does not say, as the defendants would like it to say, and as did the previous version of the statute (Fla.Stat. § 95.031(2), repealed in 1986), that no products liability action will be brought more than 12 years after the sale of the product to the first purchaser. Instead, the critical qualifying language—"if the harm was caused by the product more than 12 years after delivery of the product to its first purchaser"—suggests that the relevant inquiry is whether the harm took place more than 12 years after the sale to the first purchaser. If the harm was caused more than 12 years after the sale of the product to the first purchaser, the statute of repose constitutes an absolute bar. If not, then the applicable statute of limitations determines whether the claim is timely. The amended complaint, fairly

read, alleges that the harm was caused less than 12 years after the sale of the vaccine to Dr. Singer (whom the defendants say was the first purchaser). The statute of repose therefore is not a bar.

Second, the Florida Supreme Court has "recognized 'that the legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.' [Thus], '[w]ords in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words.'" *Metropolitan Cas. Ins. Co. v. Tepper,* 2 So.3d 209, 215 (Fla.2009) (citations omitted). As I see it, the defendants' reading of § 95.031(2)(b) would make irrelevant or superfluous the phrase "if the harm was caused." The defendants may believe that the legislature intended to create an absolute bar for products liability actions filed more than 12 years after the sale of the product to the first purchaser, but any such intent is not reflected in the text of the statute. Legislators do not always draft correctly or carefully, and statutory construction focuses primarily on the text, and not on the supposed unexpressed motives of lawmakers. *See, e.g., Freeman v. First Union National Bank,* 865 So.2d 1272, 1276 (Fla.2004); A. Scalia, A Matter of Interpretation 29–37 (1997).[3]

Third no Florida cases have definitively construed § 95.031(2)(b) since its enactment in 1999, or explained the relationship between the "if harm was caused" language and the 12–year period of repose. Although there is some language in *Stimpson v. Ford Motor Co.,* 988 So.2d 1119, 1120–21 (Fla. 5th DCA 2008), that supports the defendants' reading of the statute, that language is dicta, as the Fifth District eventually ruled that the trial

**3.** *Indeed, at oral argument, the defendants acknowledged that their reading of the statute would be aided by the insertion of several* commas that currently do not exist, and hinted that there may be a scrivener's error in the text.

court should not have granted summary judgment against the plaintiffs because they had evidence which, if believed, could establish tolling of the repose period under § 95.031(2)(d). *Becker v. Harken Inc.,* 2007 WL 473089, \*\*2–3, \*7 (S.D.Fla.2007), also construes the statute like the defendants, but it is distinguishable on its facts because there the harm took place more than 12 years after the product's sale to the first purchaser. In this case the alleged harm apparently took place less than 12 years after the sale of the vaccine to Dr. Singer.[4]

### III. Conclusion

The motions to dismiss are denied. The defendants are free to renew their arguments at the summary judgment stage following discovery.

The defendants shall file their answers by October 12, 2010, and the parties shall file a joint scheduling report by October 18, 2010.

---

4. I also note that *Becker* was decided at summary judgment.